David R. Baake (SBN 325087)
**Baake Law, LLC**
2131 N Main St
Las Cruces, NM 88001
Phone: (575) 343-2782
Email: david@baakelaw.com

*Attorney for Plaintiffs Etereo Spirits, LLC, a New Mexico Limited Liability Company, and Arthur Keller*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETEREO SPIRITS, LLC, a New Mexico limited liability company, and ARTHUR KELLER, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES R. LING, an individual, and ETEREO SPIRITS, LLC, a California limited liability company,<br><br>Defendants. | Case No.: 8:21-cv-00302-JVS-KES<br>[Honorable James V. Selna]<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>*[Filed concurrently with Declaration of Arthur Keller and Declaration of Denise Jackson]*<br><br>Hearing Date: March 29, 2021<br>Hearing Time: 1:30 PM<br><br>Action Filed:  February 16, 2021<br>Trial Date:     None Set |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

    I.    Introduction ........................................................................................ 1

    II.    Statement of Facts .............................................................................. 2

        A.    Mr. Keller Founds the NM LLC ............................................. 2

        B.    The NM LLC Enters a Distribution Agreement and Registers the U.S. Trademark for the Etereo Logo ................ 3

        C.    Defendant Ling Creates the CA LLC and Threatens to Sue Plaintiffs' Supplier .......................................................... 4

        D.    Defendants Create the Infringing Website .............................. 6

        E.    Defendants Submit Fraudulent Articles of Dissolution for the NM LLC ............................................................................ 7

        F.    Plaintiffs Suffer Irreparable Harm ........................................... 8

    III.    Plaintiff is Entitled to a Preliminary Injunction ................................. 9

        A.    Plaintiffs Are Likely to Prevail on the Merits ......................... 9

        B.    Defendants' Illegal Conduct is Irreparably Harming Plaintiff ................................................................................. 11

        C.    The Remaining Factors Favor Entry of a Preliminary Injunction ............................................................................. 13

    IV.    Bond Should Not Be Required ........................................................ 13

CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

## CASES

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) .................................. 9

*Blue Mako Inc. v. Minidis*, 2008 WL 11334205 (C.D. Cal. June 23, 2008) ..................... 10

*FAZE Apparel, LLC v. Faze Clan, Inc.*, 2018 WL 3830027 (C.D. Cal. May 22, 2018) ............................................................................................................................. 14

*Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165 (C.D. Cal. 2010) ...................................................................................................... 14

*Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239 (9th Cir. 2013) ............................................................................................................. 12

*Jorgensen v. Cassiday*, 320 F.3d 906 (9th Cir. 2003) ...................................................... 15

*Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp. 3d 877 (N.D. Cal. 2019) .................................................................................................................. 10

*McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457 (2006) ............................................ 11

*Metro. Life Ins. Co. v. Showers of Blessings Churches Worldwide, Inc.*, 1992 WL 233934 (N.D. Ill. Sept. 15, 1992). ..................................................................... 12

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137 (9th Cir. 2011) ............................................................................................................. 9

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187 (3d Cir. 1990) ........................................................................................................................ 10

*Uptime Energy, Inc. v. Up Energy Drinks LLC*, 2017 WL 10440012 (C.D. Cal. Nov. 16, 2017) ......................................................................................... 12, 13

*Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ................................................ 9

## STATUTES

Cal. Bus. & Profs. Code § 17200 ...................................................................................... 11

Cal. Penal Code § 528.5 .................................................................................................... 11

Cal. Penal Code § 530.55 .................................................................................................. 11

## RULES

Fed. R. Civ. P. 65(c) ............................................................................................................ 1

**MOTION FOR PRELIMINARY INJUNCTION**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case arises out of Defendants' brazen attempt to steal Plaintiffs' business and all of its assets. On July 24, 2019, Mr. Keller created a New Mexico limited liability company called Etereo Spirits, LLC (the "NM LLC"), which he intended to use as a vehicle to import and distribute high-end tequila products. Since its creation, Mr. Keller has been the chief executive and controlling member of the NM LLC. Mr. Keller steadily pursued his vision for the NM LLC in 2019 and 2020, entering a distribution agreement with a Mexican tequila producer, securing a certificate of denomination from the Mexican Institute of Industrial Property (allowing the company to market its product as "tequila"), obtaining a registered trademark for a distinctive logo, and developing promotional materials, which include images of Mr. Keller and his fiancé. Mr. Keller has raised over $100,000 for the company, and the first 10,000 bottles of Etereo-branded tequila are ready to ship. Mr. Keller had planned a high-profile launch to occur later this year.

But Defendants are doing everything within their power to make sure this never happens. Defendant James R. Ling ("Ling"), a business litigator based in Orange County, shares Mr. Keller's passion for tequila. In the fall of 2019, Mr. Ling made a loan to Mr. Keller, which Mr. Keller used to close the Distribution Agreement. Although Mr. Ling apparently hoped to become a member of the NM LLC, no agreement was ever reached to provide him with such an interest. In fall of 2020, Mr. Keller offered to repay the loan, with interest. Mr. Ling refused to accept.

Disappointed that he was not able to secure a membership interest in the NM LLC—i.e., the company called Etereo Spirits, LLC that Mr. Keller created in New Mexico in July 2019—Mr. Ling decided to start *his own* Etereo Spirits, LLC. On September 25, 2020, approximately 14 months after Mr. Keller created the NM LLC, Mr. Ling incorporated a California limited liability company called "Etereo Spirits, LLC," referred to here as the "CA LLC."

Since then, Defendants have set out to destroy Mr. Keller's company. Among other things, Defendants have: (1) submitted fraudulent articles of dissolution for the NM LLC, causing it temporarily to lose its good standing with the New Mexico Secretary of State; (2) threatened to sue the NM LLC's supplier unless the supplier breached its distribution agreement with the NM LLC; and (3) created a website that features the NM LLC's trademarked logo, promotional materials created by Mr. Keller, and images of Mr. Keller and his fiancé.

Plaintiffs bring this motion to enjoin Defendants' grossly unlawful behavior. Among other things, Defendants are currently committing trademark infringement in violation of the Lanham Act, false impersonation on a website in violation of Cal. Penal Code § 528.5, and unfair competition in violation of Business & Professions Code § 17200. Plaintiffs request that the Court issue a preliminary injunction enjoining Defendants from (1) using Plaintiffs' registered trademark; (2) falsely impersonating Plaintiffs online; (3) falsely impersonating Plaintiffs in communications with any government agency; or (4) tortiously interfering with Plaintiffs' contractual relationships.

## II. STATEMENT OF FACTS

### A. Mr. Keller Founds the NM LLC

On July 24, 2019, Mr. Keller created a New Mexico limited liability company known as Etereo Spirits, LLC (the "NM LLC"). Declaration of Arthur Keller [hereinafter "Keller Dec."], ¶ 2. Mr. Keller hired Northwest Registered Agent, Inc. ("Northwest") to organize the NM LLC and maintain its good standing with the New Mexico Secretary of State. *Id.* Northwest also agreed to serve as the NM LLC's registered agent. *Id.* The Articles of Organization issued by the Secretary of State list Northwest as the registered agent and point of contact for the company. *Id.*, Ex. A; *see also* Declaration of Denise Jackson [hereinafter "Jackson Dec.], ¶ 2.

On July 24, 2019, Northwest prepared an Initial Resolution and Operating Agreement for the NM LLC. Keller Dec., ¶ 3 & Ex. B. These documents state that

Mr. Keller is the Chief Executive Member and sole owner of the NM LLC. *Id.*

On September 24, 2020, Mr. Keller caused Northwest to amend the Initial Resolution to include a second member, Nowa Silou. *Id.*, ¶ 4 & Ex. C. Mr. Silou was given a 0.27% interest and listed as a "Non-managing member and Investor." *Id.* Mr. Keller retained a 99.73% interest and remained the Chief Executive Member. *Id.* No further amendments were made to the Initial Resolution between September 24, 2020 and the initiation of this lawsuit. *Id.*, ¶ 5. Defendant Ling never had a membership interest in the NM LLC; nor was he ever a manager, employee, or agent of the company. *Id.*, ¶ 14.

### B. The NM LLC Enters a Distribution Agreement and Registers the U.S. Trademark for the Etereo Logo

After founding the NM LLC, Mr. Keller worked steadily to make his vision a reality. On September 9, 2019, Mr. Keller signed a Distribution Agreement between the NM LLC and Tequilas Rancho Viejo SA de CV ("Casa Aceves"), a tequila producer based in the Mexican state of Jalisco. *Id.*, ¶ 6 & Ex. D. On October 7, 2019, the NM LLC obtained a Certificate of Denomination from the Mexican Institute of Industrial Property, which allowed the company to market its product as "tequila." *Id.*, ¶ 7 & Ex. E.

In preparation for the launch of the Etereo brand, a former associate of Mr. Keller—an individual named Hamade Nasser—retained a designer named Brian Neveu to create a distinctive logo for the brand. *Id.*, ¶ 8. Mr. Neveu created several prototypes, which he shared with Keller and Nasser around June 6, 2019. *Id.* From these prototypes, Keller and Nasser chose a distinctive image that became the "Etereo Logo." *Id.*, ¶ 9. The Etereo Logo incorporates two images that pay homage to Mexican culture. *Id.* The first image is a cyclops figure found on petroglyphs created by the Toltecs, an ancient civilization that dominated central Mexico after the fall of Teotihuacán around 550 C.E. but before the rise of the Aztecs in the 1300s. *Id.* The second image is an agave plant, which appears to be growing out of the head. *Id.*

The Etereo Logo looks like this:

*Id.*, ¶ 10. After receiving the Etereo Logo, Mr. Keller worked with the lead designer at Casa Aceves to incorporate the it into the design of the entire bottle. *Id.*, ¶ 11.

On August 29, 2019, Mr. Keller caused the NM LLC to file an application with the U.S. Patent and Trademark Office ("PTO") to obtain a registered trademark for the Etereo Logo. *Id.*, ¶ 13. The application was unopposed. *Id.*[1] On March 31, 2020, the PTO granted the NM LLC's application, registering the Etereo Logo as U.S. Trademark Registration No. 6,023,306. *Id.*, Ex. F.

## C. **Defendant Ling Creates the CA LLC and Threatens to Sue Plaintiffs' Supplier**

Before this dispute arose, Mr. Ling's *only* involvement with the NM LLC was to make a loan to Plaintiffs. Keller Dec., ¶ 18. Although Mr. Ling apparently wanted to become an equity owner in the NM LLC, no agreement was ever reached to provide him with such an interest. *Id.* In fact, no documentation was ever prepared to formalize the transaction. *Id.* In fall of 2020, Mr. Keller offered to repay this loan, with interest; Mr. Ling has refused to accept. *Id.*

In 2019 and early 2020, Mr. Keller had been working with Mr. Nasser to establish an international component to Etereo Spirit's business. *Id.*, ¶ 19. Mr. Nasser was never involved in the NM LLC or in any of the activities Mr. Keller was undertaking to establish Etereo Spirits in the United States. *Id.*

---

[1] Mr. Nasser received consideration for his role in locating the designer who prepared the Etereo Logo. Keller Dec., ¶ 12. Mr. Nasser understood that Mr. Keller intended to register the Etereo Logo as a trademark in the United States, through his wholly-owned limited liability company, the NM LLC. *Id.*

In summer 2020, Mr. Keller's business relationship with Mr. Nasser's broke down, after Mr. Nasser began engaging in tortious and unprofessional misconduct. *Id.*, ¶ 20. Mr. Ling initially sought to convince Mr. Keller to continue working with Mr. Nasser. *Id.* When this failed, Mr. Ling began a willful, wanton, and malicious campaign to steal Etereo Spirits and all of its assets from Plaintiffs. *Id.*

On September 25, 2020, approximately 14 months *after* the NM LLC was incorporated, Mr. Ling registered a limited liability company in California with an identical name: Etereo Spirits, LLC (the "CA LLC"). *Id.*, ¶ 22. Mr. Ling founded the CA LLC with the intention of using it to confuse and defraud persons associated with the NM LLC, including, but not limited to, its supplier, Casa Aceves. *Id.*

On December 7, 2020, Mr. Ling caused a demand letter to be sent to Casa Aceves by Mata & Associates, a law firm with offices in Guadalajara, Jalisco. The letter states, in pertinent part:

> [T]his law firm represents the Etereo Spirits, LLC, and its rightful owners, James Ling and Hamade Nasser (collectively, the "Claimants") in connection with potential claims against Casa Aceves for breach of contract arising from your breach of the manufacturing agreement with the Claimants. . . . As you are aware, in around August 2019, the Claimants, through their business entity, Etereo Spirits, LLC, entered into a manufacturing agreement with you for the production of three different types of tequila. The Claimants, through Mr. Ling's personal bank account, transferred funds directly to Casa Aceves for the production of the bottles pursuant to the terms of the Agreement.
>
> We have been informed that Casa Aceves now refuses to perform the terms of the Agreement or deal with Messrs. Ling or Nasser, the rightful owners of Etereo Spirits, LLC. We have further been informed that despite the Claimants providing you with legal documentation showing their ownership interests in Etereo, you are conspiring with Mr. Keller to breach the contract. Demand is hereby made to immediately cease the production of any bottles for Mr. Keller and to continue production and delivery of the bottles for the Claimants. ***Should you fail to respond within seven (7) calendar days, we will file a lawsuit against your facility . . . .***

*Id.*, ¶ 27 & Ex. I (emphasis added).

### D. **Defendants Create the Infringing Website**

In January 2021, Plaintiffs learned that Mr. Ling was operating a website called www.etereolifestyle.com. Keller Dec., ¶ 28. The website repeatedly reproduces the Etereo Logo, which, as explained, is a registered trademark of the NM LLC. *Id.* The infringing website contains text that is copied word-for-word from marketing materials that Mr. Keller prepared, as well as images Mr. Keller created using Photoshop. *Id.*, ¶ 29.

Most egregiously of all, the infringing website contains videos and photographs that Mr. Keller created—including a photograph that he took of his fiancé*.* *Id.*, ¶ 30. Mr. Keller's fiancé is the individual on the far left in this photograph, which appears on the "Lifestyle" page on the infringing website:



*Id.* The infringing website also includes two videos that Mr. Keller created or caused to be created, one of which includes footage of Mr. Keller himself. *Id.*[2]

Mr. Ling made no effort to cover his tracks in connection with the infringing website. The "About Us" states as follows:

> *Jimmy (the American) and Hamade (the Frenchman) first met in London by pure chance at the premier nightclub, Tape London, where Hamade served as VIP host for the most exclusive celebrities. Their energy together was electric. The first thing the two visionaries did was share a shot of tequila as a statement to welcome the other into his life. After an hour and several more tequila shots, Jimmy, Hamade, and a group*

---

[2] Mr. Keller has gone through and annotated all of the pages on the infringing website, identifying examples of content that infringes upon Plaintiffs' intellectual property rights. Keller Dec., ¶ 31, Ex. J.

*of their newfound friends from around the globe booked flights to the magical island of Ibiza.*

*Id.*, ¶ 32. In addition, the address listed on the infringing website is the same one listed on the registration for the CA LLC. *Id.*

Mr. Ling has also made false, misleading, and infringing posts on social media. For example, Mr. Ling states that he is the "Co-founder of @etereolifestyle" on his personal Instagram page. *Id.*, ¶ 34. Mr. Ling appears to have created two additional Instagram profiles—@etereolifestyle and @etereo_tequila, each of which use the Etereo Logo and various photographs created by Plaintiffs. *Id.*

**E. Defendants Submit Fraudulent Articles of Dissolution for the NM LLC**

On October 28, 2020, Mr. Ling and/or Mr. Nasser submitted fraudulent Articles of Dissolution to the New Mexico Secretary of State. Keller Dec., ¶ 24 & Ex. H. The document states that the NM LLC has been dissolved "[u]pon the written consent of the members having a majority share of the voting power of all members." *Id.* It was signed by Mr. Nasser, who lists himself as "Manager," and states that Mr. Ling and Mr. Nasser are the persons who have authority to act for the limited liability company in connection with the winding up of its business and affairs. *Id.*

These articles were fraudulent because neither Mr. Ling nor Mr. Nasser had any interest in the NM LLC or authority to act on its behalf. At the time these articles were filed, Mr. Keller held a 99.73% interest in the NM LLC and was its chief executive. *Id.*, ¶ 4. The organizer and registered agent charged with managing all aspects of the NM LLC's relationship with the New Mexico Secretary of State never had any relationship with Defendants and was shocked when it realized the company had been dissolved. Jackson Dec., ¶¶ 2–6. Although these articles were fraudulent, the New Mexico Secretary of State issued a Certificate of Dissolution for the NM LLC. Keller Dec., ¶ 26, Ex. H.[3] The Certificate of Dissolution was mailed to Mr.

---

[3] According to a February 9, 2021 email from Ms. Victoria Stull at the New Mexico Secretary of State, the department's understanding is that it is "not required to confirm or validate the members of the LLC" when reviewing articles of dissolution. Keller Dec., ¶ 25, Ex. G.

Ling at 107 Mighty Oak in Irvine, California. *Id.*

### F. Plaintiffs Suffer Irreparable Harm

Defendants' willful, wanton, and malicious conduct threatens to destroy the business Mr. Keller has spent countless hours working to build over the past several years. Defendants' use of Plaintiffs' registered trademark is causing confusion, mistake, and deception. *Id.*, ¶ 35. For example, Mr. Keller is currently raising money for the NM LLC, and has raised over $100,000 to date. *Id.* However, Defendants' wrongful conduct—and in particular, their creation of the infringing websites and social media pages—has made it "all but impossible to bring new investors into the project." *Id.* Mr. Keller has also experienced problems with existing investors, who are confused as to whether he is in fact the owner and manager of the NM LLC. *Id.* Instagram has been actually confused by the infringing website. It suspended Plaintiffs' account—@etereotequila—for almost a week in January 2021, based on its incorrect determination that *Plaintiffs* were infringing upon their own logo. *Id.*, ¶ 37. Instagram subsequently reinstated Plaintiffs' account, but declined to remove Defendants' infringing page based on its ongoing inability to determine who is legally entitled to use the Etereo brand. *Id.*

Defendants' tortious interference with the NM LLC's contract with Casa Aceves likewise presents an existential threat to its business. *Id.*, ¶ 36. Without a supplier based in the state of Jalisco or a designated municipality in Guanajuato, Michoacán, Nayarit, and Tamaulipas, Plaintiffs cannot legally sell a liquor labeled as "tequila." *Id.* Unless Defendants' tortious conduct is enjoined, the NM LLC may lose one of its most valuable assets—the contract with Casa Aceves and the certificate of origin issued by the Mexican Institute of Industrial Property.

Finally, it is self-evidence that Defendants' submission of fraudulent articles of dissolution for the NM LLC have irreparably harmed Plaintiffs by causing the NM LLC temporarily to lose its good standing with the New Mexico Secretary of State. …

### III. PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). The Ninth Circuit uses a "sliding scale" approach, where "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

#### A. **Plaintiffs are Likely to Prevail on the Merits**

##### i. **Trademark Infringement**

To prevail on a claim of trademark infringement, a plaintiff must show (a) ownership of a valid mark and (b) use by defendant in commerce of a mark likely to cause consumer confusion. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011). Each element is satisfied here.

As to the first element, Plaintiffs have submitted a certificate of registration from the U.S. Patent and Trademark Office for the mark in question.[4] "A federal trademark registration is prima facie evidence of: (1) the validity of the registered mark; (2) the registration of the mark; (3) the registrant's ownership of the mark; and (4) the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified." *Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp. 3d 877, 884–85 (N.D. Cal. 2019) (citing 15 U.S.C. § 1057(b) and other authorities).

As to the second element, Plaintiffs have submitted evidence that Defendants are using *the registered mark itself* on their infringing website and on their social media pages.[5] "[L]ikelihood of confusion is inevitable, when, as in this case, the identical mark is used concurrently by unrelated entities." *Opticians Ass'n of Am. v.*

---

[4] Keller Dec., ¶ 13 & Ex. F.
[5] *Id.*, ¶¶ 28–34, & Exs. J, K.

*Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990); *see also Blue Mako Inc. v. Minidis*, 2008 WL 11334205, at *5 (C.D. Cal. June 23, 2008) ("Cases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports. Such cases are 'open and shut' and do not involve protracted litigation to determine liability . . . .") (quoting 2 McCarthy, § 23:3).

Because Plaintiffs hold a federal trademark registration for the Etereo Logo, and Defendants are using that exact logo on their website without Plaintiffs' consent, Plaintiffs are likely to succeed on their trademark infringement claim.

### ii. False Personification

Under Cal. Penal Code § 528.5(a), "any person who knowingly and without consent credibly impersonates another actual person through or on an Internet Web site or by other electronic means for purposes of harming, intimidating, threatening, or defrauding another person" has committed a misdemeanor offense. A person injured by a violation of this statute is authorized to bring a civil action "for compensatory damages and injunctive relief." *Id.*, § 528.5(e).

Plaintiffs are likely to succeed on the merits of their false personification claim. The NM LLC is a "person" within the meaning of the false personification statute. *See* Cal. Penal Code § 530.55 (defining "person" for purposes of this chapter to include a "limited liability company"). Defendants have knowingly, and without consent, credibly impersonated Plaintiffs on their website as well as on social media. Among other things, the website features images of Mr. Keller and his fiancé.[6] It also includes the Etereo Logo, which is a registered trademark belonging to the NM LLC.[7] Defendants' purpose in creating this website and the related social media pages was unquestionably to harm, intimidate, threaten, or defraud Plaintiffs. Accordingly, Plaintiffs are likely to prevail on the merits of this claim.

### iii. Unfair Competition

---

[6] *Id.*, ¶ 30.
[7] *Id.*, ¶¶ 28, 31, Ex. J.

Section 17200 of the California Business & Professions Code [the "UCL"] prohibits any person from engaging in an unlawful, unfair, or fraudulent business practice. "A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006). "In determining whether a business practice is unfair under this approach, California courts balance the impact on its alleged victim against the reasons, justifications, and motives of the alleged wrongdoer." *Id.* (quotation marks omitted).

Plaintiffs will likely be able to show that Defendants have engaged in numerous unlawful, unfair, or fraudulent business practices. Two are relevant for this motion. First, Defendants intentionally and improperly sought to interfere with Plaintiffs' Distribution Agreement, threatening to sue Plaintiffs' supplier if the supplier refused to renege on the agreement.[8] Second, and most egregiously, Defendants submitted fraudulent articles of dissolution to the New Mexico, misrepresenting to the New Mexico Secretary of State that they were authorized to act on behalf of the NM LLC.[9] Plaintiffs were able to find only *one* case from any state or federal court involving a similar stratagem[10]—demonstrating how unprecedented and extreme Defendants' action was. Plaintiffs will likely prevail on their unfair competition claim.

### B. Defendants' Illegal Conduct is Irreparably Harming Plaintiff

Evidence that a defendants' trademark infringement has caused a plaintiff to lose control over its business reputation is sufficient to establish irreparable harm. *See Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013). Irreparable harm exists where "consumers, suppliers, and

---

[8] *Id.*, ¶¶ 6, 15, 27 & Ex. I.
[9] *Id.*, ¶¶ 1–5, 14, 24–26 (and associated exhibits); Jackson Dec., ¶¶ 2–6.
[10] *See Metro. Life Ins. Co. v. Showers of Blessings Churches Worldwide, Inc.*, 1992 WL 233934, at *2 (N.D. Ill. Sept. 15, 1992).

competitors have experienced actual confusion" as to whether the infringing material is associated with the plaintiff. *Uptime Energy, Inc. v. Up Energy Drinks LLC*, 2017 WL 10440012, at *12 (C.D. Cal. Nov. 16, 2017). Likewise, confusion as to whether the plaintiff and defendant are related companies can establish that defendants' conduct is irreparably harming the plaintiff's reputation. *See id.*

This is an extreme case. Defendants are not merely using a name or logo similar to those used by Plaintiffs. Defendants are actively trying to steal Plaintiffs' identity, using everything from the logo that Plaintiffs trademarked to images of the Individual Plaintiff and his fiancé on their website. The *purpose* of Defendants' infringement is to cause potential investors, suppliers, consumers, and others to believe that Defendants are the rightful owners of the Etereo Spirits brand, so that Defendants can reap the rewards of Plaintiffs' hard work and steal the business Plaintiffs are in the process of creating.

Mr. Keller has submitted evidence that Defendants' wrongful conduct is having its intended effect. He explains that he is currently attempting to raise money for the NM LLC, and has already raised over $100,000 to date.[11] However, Defendants' wrongful conduct—and in particular, their creation of the infringing websites and social media pages—has made it "all but impossible to bring new investors into the project."[12] Mr. Keller has also experienced problems with existing investors, who are actually confused as to whether he is in fact the owner and manager of the NM LLC.[13] Instagram has been actually confused by the infringing website.[14] It temporarily suspended Plaintiffs' account for almost a week in January 2021, based on its mistaken belief that Plaintiffs were infringing upon their own registered trademark. *Id.* Although it subsequently reinstated Plaintiffs' page, it declined to remove Defendants' infringing pages based on its inability to verify that

---

[11] Keller Dec., ¶ 35.
[12] *Id.*, ¶ 36.
[13] *Id.*
[14] *Id.*, ¶ 37.

the page is infringing. *Id.*

### C. The Remaining Factors Favor Entry of a Preliminary Injunction

The balance of equities favors entry of a preliminary injunction where the evidence shows that defendant's trademark infringement is causing actual confusion. *See FAZE Apparel, LLC v. Faze Clan, Inc.*, 2018 WL 3830027, at *8 (C.D. Cal. May 22, 2018) (balance of equities favored preliminary injunction because "Plaintiff's business reputation may be completely overwhelmed by Defendant's products" if injunction not granted). Where the plaintiff provides evidence of actual confusion, even evidence that a preliminary injunction could *drive the defendant out of business* is not enough to shift the balance in the defendant's favor. *See Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1183 (C.D. Cal. 2010) ("The Court is not convinced that a preliminary injunction will put [defendant] out of business, but, in any event, where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration.") (citation and quotation marks omitted). As to the last factor, "[t]he public interest favors a preliminary injunction where . . . the plaintiff has shown a likelihood of confusion." *Id.*

As explained, Defendants are actively trying to steal Plaintiffs' identity, using everything from the logo that Plaintiffs trademarked to images of the Individual Plaintiff and his fiancé on their website. The *purpose* of Defendants' infringement is to cause potential investors, suppliers, consumers, and others to believe that Defendants are the rightful owners of the Etereo Spirits brand, so that Defendants can reap the rewards of Plaintiffs' hard work and steal the business Plaintiffs are in the process of creating. The balance of the equities and the public interest clearly militate in favor of an injunction in these circumstances.

### IV. BOND SHOULD NOT BE REQUIRED

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay

the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Ninth Circuit has "recognized that Rule 65(c) invests the district court 'with discretion as to the amount of security required, *if any*.'" *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citations omitted; emphasis in original).

Bond should not be required here. Defendants' conduct is extreme, and fragrantly violates numerous statutes, including the Lanham Act, Cal. Penal Code § 528.5, and the UCL. The likelihood that a preliminary injunction will subsequently be found to be improvidently granted is remote. Moreover, the CA LLC was created less than 6 months ago. It would not suffer damages in any appreciable amount if the injunction were to issue.

## **CONCLUSION**

The Court issue a preliminary injunction enjoining Defendants from (1) using Plaintiffs' registered trademark; (2) falsely impersonating Plaintiffs online; (3) falsely personifying Plaintiffs in communications with any government agency; or (4) tortiously interfering with Plaintiffs' contractual relationships.

Dated: February 17, 2021　　　　　　　　　　BAAKE LAW LLC

By: /s/ David Baake
David Baake
Attorneys for Plaintiffs